**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **Baltimore-D.C. Metro Building and Construction Trades Council,** *Plaintiff,* v. **Metropolitan Washington Airports Authority,** *Defendant.* | No. 1:26-cv-00296-PTG-WEF |

**MEMORANDUM IN OPPOSITION TO METROPOLITAN WASHINGTON
AIRPORTS AUTHORITY'S MOTION TO DISMISS**

Lucas R. Aubrey
    Va. Bar No. 74641
Jacob J. Demree, PHV
*Attorneys for the Baltimore-D.C. Metro
Building and Construction Trades Council*
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
Phone: (202) 785-9300
Fax: (202) 775-1950
aubrey@shermandunn.com
demree@shermandunn.com

March 12, 2026

**TABLE OF CONTENTS**

Table of Authorities.............................................................................................................. iii

Introduction........................................................................................................................ 1

Legal Standard ................................................................................................................... 2

Argument ........................................................................................................................... 3

    I.      The Baltimore-DC Building Trades Has Standing. ................................................. 3

    II.    The Baltimore-DC Building Trades' Complaint Plausibly Alleges that MWAA Violated Its Lease. ................................................................................... 7

        A.     MWAA's Motion to Dismiss for Failure to State a Claim Improperly Relies on Evidence Outside the Complaint. ........................... 7

        B.     MWAA's Lease Requires It to Comply with Procurement Policies Like Resolution 22-35.................................................................. 8

            1.     Resolution 22-35 Is a Published Competitive Procedure. ............. 8

            2.     Federal District Courts Have Jurisdiction to Compel MWAA to Comply with All Lease Terms.................................... 10

            3.     Resolution 22-35 Serves Federal Interests, Not Just the Baltimore-DC Building Trades' Interests in Collective Bargaining.................................................................................. 12

        C.     MWAA Violated Its Lease by Failing to Comply with Resolution 22-35..................................................................................... 14

Conclusion ....................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page(s)**

*AFGE v. United States*,
    258 F.3d 1294 (Fed. Cir. 2001)..................................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................... 2-3

*Associated Builders & Contractors, Inc. v. S. Nev. Water Auth.*,
    979 P.2d 224 (Nev. 1999) (per curiam) ...................................................................................8

*Associated Builders & Contractors, Inc. v. San Francisco Airports Comm'n*,
    981 P.2d 499 (Cal. 1999) .........................................................................................................8

*Balt. Gas & Elec. Co. v. United States*,
    290 F.3d 734 (4th Cir. 2002) ..................................................................................................4

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) ..................................................................................................2

*Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors*
    *of Mass./R.I., Inc.* (*Boston Harbor*), 507 U.S. 218 (1993) ................................................13

*Brasfield & Gorrie, LLC v. United States*,
    179 Fed. Cl. 509, 2025 U.S. Claims LEXIS 3637 (2025) ............................................... 8-9

*Calla Mejia v. Sessions*,
    866 F.3d 573 (4th Cir. 2017) ..................................................................................................5

*Dist. of Columbia v. Heller*,
    554 U.S. 570 (2008)...............................................................................................................16

*Enertech Elec., Inc. v. Mahoning Cnty. Comm'rs*,
    85 F.3d 257 (6th Cir. 1996) ...................................................................................................8

*Fulton v. City of Philadelphia*,
    593 U.S. 522 (2021)...............................................................................................................16

*HERE Loc. 57 v. Sage Hosp. Res., LLC*,
    390 F.3d 206 (3d Cir. 2004)..................................................................................................13

*John T. Callahan & Sons, Inc. v. City of Malden*,
    713 N.E.2d 955 (Mass. 1999) .................................................................................................8

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
  623 F.3d 1011 (9th Cir. 2010) ...............................................................................13

*Judson v. Bd. of Supervisors*,
  No. 18-cv-121, 2019 U.S. Dist. LEXIS 104381 (E.D. Va. June 20, 2019) .........................2

*Laborers Loc. #942 v. Lampkin*,
  956 P.2d 422 (Alaska 1998).....................................................................................8

*LTMC/Dragonfly, Inc. v. MWAA*,
  699 F. Supp. 2d 281 (D.D.C. 2010) ..................................................................... 5-6

*Master Builders of Iowa, Inc. v. Polk County*,
  653 N.W.2d 382 (Iowa 2002) ..................................................................................8

*MVL USA, Inc. v. United States*,
  174 Fed. Cl. 437 (2025) .................................................................................... 8-9

*N. Am. Sav. Ass'n v. Fed. Home Loan Bank Bd.*,
  755 F.2d 122 (8th Cir. 1985) ..................................................................................6

*N. Am.'s Bldg. Trades Unions v. Dep't of Def.*,
  783 F. Supp. 3d 290 (D.D.C. 2025) ..........................................................................9

*Nat. Res. Def. Council v. NRC*,
  666 F.2d 595 (D.C. Cir. 1981) ................................................................................6

*Newport News Shipbuilding & Dry Dock Co. v. U.S. Dep't of the Navy*,
  960 F.2d 386 (4th Cir. 1992) ................................................................................14

*NRC v. Texas*,
  605 U.S. 665 (2025)...............................................................................................5

*Percipient.ai, Inc. v. United States*,
  104 F.4th 839 (Fed. Cir. 2024) ...............................................................................4

*Percipient.ai, Inc. v. United States*,
  153 F.4th 1226 (Fed. Cir. 2025) (en banc), *cert. denied*, 223 L. Ed. 2d 509 (2026)....... 3-4

*San Jose Constr. Grp. v. MWAA*,
  415 F. Supp. 2d 643 (E.D. Va. 2006) .....................................................................11

*SourceAmerica v. U.S. Dep't of Educ.*,
  368 F. Supp. 3d 974 (E.D. Va. 2019), *vacated in part sub nom. Kansas v.
  SourceAmerica*, 826 F. App'x 272 (4th Cir. 2020) (per curiam).........................................5

iv

*Stone v. INS*,
514 U.S. 386 (1995)..................................................................................................15

*Wash.-Dulles Transp., Ltd. v. MWAA*,
87 F. App'x 843 (4th Cir. 2004) (per curiam) ....................................................14

*Wash.-Dulles Transp., Ltd. v. MWAA*,
263 F.3d 371 (4th Cir. 2001) ......................................................................... 10-12

*Wilson v. O'Bryant*,
No. 22-cv-556, 2023 U.S. Dist. LEXIS 173554 (E.D. Va. Sept. 27, 2023) ..................... 7-8

*Wilson v. UnitedHealthcare Ins. Co.*,
27 F.4th 228 (4th Cir. 2022) ........................................................................5

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) ........................................................................7

**Statutes**

5 U.S.C. § 702............................................................................................... 5-6

28 U.S.C. § 1491(b)(1) .....................................................................................3

49 U.S.C. § 49101(3) .......................................................................................12

49 U.S.C. § 49101(10) ......................................................................................12

49 U.S.C. § 49102(a) .......................................................................................12

49 U.S.C. § 49104(c) ........................................................................................8

Consolidated Appropriations Act, 2024 div. F, tit. I,
Pub. L. No. 118-42, 138 Stat. 25, 311 ...............................................................18

D.C. Code § 2-360.08(a).....................................................................................4

Full-Year Continuing Appropriations & Extensions Act, 2025 § 11301(3),
Pub. L. No. 119-4, 139 Stat. 9, 38 ....................................................................18

Infrastructure Investment & Jobs Act div. J, tit. VIII,
Pub. L. No. 117-58, 135 Stat. 429, 1418-19......................................................19

Pub. L. No. 99-500, 100 Stat. 1783, 1783-378 .................................................8

Va. Code Ann. § 2.2-4360(A).............................................................................4

Va. Code Ann. § 2.2-4364 ..................................................................................................4

**Other Authorities**

D.C. Mun. Regs. tit. 27, § 199.1 ........................................................................................4

D.C. Mun. Regs. tit. 27, § 300.1 ........................................................................................4

Eligible, *Black's Law Dictionary* (11th ed. 2019) ..........................................................17

Eligible, *Webster's Third New International Dictionary* (2002)......................................17

FAA, *Airport Improvement Program (AIP) 2025-2027 Supplemental Appropriation*,
     https://www.faa.gov/airports/aip/aip_supplemental_appropriation (last visited
     Mar. 12, 2026)..........................................................................................................18

FAA, *FY 2026 Notice of Funding Opportunity: Airport Terminal Program (ATP)* (Dec.
     8, 2025), https://www.faa.gov/newsroom/FY26-ATP-NOFO-8DEC2025 ..................19

FAA, *National Plan of Integrated Airport Systems (NPIAS) 2025-2029* app. A (Sept. 30,
     2024), https://www.faa.gov/sites/faa.gov/files/airports/planning_capacity/npias/
     current/ARP-NPIAS-2025-2029-Appendix-A.pdf ................................................17

FAA, Order 5100.38D Change 1, *Airport Improvement Program Handbook* (Feb. 26,
     2019), https://www.faa.gov/documentLibrary/media/Order/AIP-Handbook-Order-
     5100-38D-Chg1.pdf ............................................................................................ 17-18

Fed. R. Civ. P. 12(b)(1)......................................................................................................2

Fed. R. Civ. P. 12(b)(6)......................................................................................................2

Fed. R. Civ. P. 12(d) ..........................................................................................................7

Model Procurement Code for State & Loc. Gov'ts (A.B.A. 2000) ....................................4

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*
     (2012).........................................................................................................................16

U.S. Gov't Accountability Off., B-424037, *HHI Corp.* (Feb. 18, 2026),
     https://www.gao.gov/assets/890/884273.pdf.............................................................9

WMATA, *Office of Procurement and Materials (PRMT) Best Practices Manual (BPM)*
     (Sept. 4, 2024), https://www.wmata.com/business/procurement/upload/Best-
     Practices-Manual.pdf ..................................................................................................5

**INTRODUCTION**

Most of the issues in this case are not in dispute. The Baltimore-D.C. Metro Building and Construction Trades Council ("Baltimore-DC Building Trades") has Article III standing, the Enabling Act gives this Court jurisdiction to compel the Metropolitan Washington Airports Authority ("MWAA") to comply with its lease with the federal government, and the Tier 2 Center project is estimated to cost $35 million or more.[1]

MWAA's motion to dismiss focuses on three issues. **First, should the Baltimore-DC Building Trades have protested the Tier 2 Center solicitation?** No, because the Baltimore-DC Building Trades was not an actual or potential bidder or offeror. As a result, it did not have a sufficient "interest" to file a bid protest.

**Second, is MWAA bound by Resolution 22-35?** Yes. Resolution 22-35 is a published competitive procedure that, under the federal lease, MWAA is bound to comply with. Resolution 22-35 is also a policy in the areas of procurement and contracting, and failing to comply with binding policies is not in accordance with generally accepted management principles. Finally, Resolution 22-35 serves federal interests on large-scale construction projects.

**And third, does the term "eligible" in Resolution 22-35 apply to more projects than those for which MWAA has applied for discretionary federal funding?** Yes it does. MWAA decided not to limit Resolution 22-35 to projects where MWAA is *seeking* funding. This Court should presume that MWAA's Board had a reason for amending the resolution and should reject

---

[1]    Based on its communications with MWAA's General Counsel, the Baltimore-DC Building Trades referred to a "Dulles Tier 2 Concourse-East Phase II and III and Central Utility Plant project" in its complaint and preliminary injunction motion. That project is the same as the "Tier 2 Center" project referred to in MWAA's motion to dismiss and response to the preliminary injunction motion. Similarly, the "Dulles Tier 2 Concourse-East Phase I project" is the same as the "Tier 2 East" project. For simplicity, this filing uses "Tier 2 Center" and "Tier 2 East."

1

MWAA's arguments to the contrary.

Finally, the Court should resolve this motion separately from the Baltimore-DC Building Trades' motion for a preliminary injunction and should consider only the complaint, documents attached to the complaint, and matters subject to judicial notice. Though MWAA asked this Court to consider the motion to dismiss and the preliminary injunction motion together, since "the issues and argument . . . would largely overlap," Memo. in Support of MWAA's Mot. for Extension of Time ¶ 5, ECF No. 12, the burdens and evidentiary standards differ. Regardless of the Court's ruling on the preliminary injunction motion, the Court should deny MWAA's motion to dismiss because the Baltimore-DC Building Trades has shown that the Court has subject-matter jurisdiction, and MWAA has failed to meet its burden of showing that the complaint failed to plausibly allege a violation of the Enabling Act.[2]

## LEGAL STANDARD

MWAA moves to dismiss under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. When a party relies on the complaint and matters of judicial notice in moving to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) (as MWAA does here), that party makes a facial attack, meaning the plausibility standard used for 12(b)(6) motions to dismiss applies. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017); *Judson v. Bd. of Supervisors*, No. 18-cv-121, 2019 U.S. Dist. LEXIS 104381, at *10-11 n.4 (E.D. Va. June 20, 2019).

In deciding a facial motion to dismiss for lack of subject-matter jurisdiction or a motion to dismiss for failure to state a claim, courts must "accept as true all of the allegations contained in a

---

[2]    The Baltimore-DC Building Trades concedes that its arguments relating to the North Airfield improvements project are now moot because, in response to this lawsuit, MWAA has voluntarily amended the solicitation to extend the date proposals are due and to add a PLA requirement to the solicitation.

complaint" and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A complaint survives a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim when "the plaintiff pleads factual content that allows the court to draw the reasonable inference" that the court has subject-matter jurisdiction and that "the defendant is liable for the misconduct alleged." *Id.* at 678.

## ARGUMENT

### I.      The Baltimore-DC Building Trades Has Standing.

MWAA does not dispute that the Baltimore-DC Building Trades has Article III standing. However, it raises two *statutory* standing arguments premised on the fact that the Baltimore-DC Building Trades did not protest the Tier 2 Center solicitation. First, MWAA points out that Section 9.3 of its Contracting Manual "allows anyone 'with a legitimate interest in the procurement' to submit a protest." MWAA MTD Memo. 13. According to MWAA, because the Baltimore-DC Building Trades "failed to file a protest during the period authorized by Section 9.2.1 of the Contracting Manual, [and] was never a party to the administrative proceeding," the Baltimore-DC Building Trades is not an "aggrieved party" within the meaning of the Enabling Act. *Id.* Second, MWAA claims that the Baltimore-DC Building Trades' "failure to submit a timely protest of th[e] solicitation constitutes a waiver of its right to bring a claim against the Airports Authority." *Id.* at 15.

Both arguments fail, because the Baltimore-DC Building Trades had no right to file a bid protest. In the procurement context, the word "interest" has a highly specialized meaning. For example, under the Tucker Act, only an "*interested* party" may file a bid protest in the Court of Federal Claims. 28 U.S.C. § 1491(b)(1) (emphasis added). The Federal Circuit has "long held that the term 'interested party' for bid protests should be limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by

failure to award the contract." *Percipient.ai, Inc. v. United States*, 153 F.4th 1226, 1235 (Fed. Cir. 2025) (en banc), *cert. denied*, 223 L. Ed. 2d 509 (2026). The original panel opinion in *Percipient.ai* held that a non-bidder was an interested party in that case "because it offered a commercial product that had a substantial chance of being acquired to meet the needs of the agency had the violations not occurred." 104 F.4th 839, 855 (Fed. Cir. 2024). To the panel, prohibiting the non-bidder from "challeng[ing] statutory violations in connection with procurements" would leave federal procurement statutes with "minimal bite." *Id.* at 857. But the Federal Circuit, sitting en banc, rejected the panel's reasoning. "The term 'interested party' carries the context imparted by the history of bid protest cases and prior statutes." 153 F.4th at 1236. Relying on past interpretations of "interested party," the en banc *Percipient.ai* opinion held that non-bidders lack standing to file bid protests over federal procurements. *Id.* at 1243; *see Balt. Gas & Elec. Co. v. United States*, 290 F.3d 734, 739 (4th Cir. 2002) (adopting the Federal Circuit's interpretation of the term "interested party"); *AFGE v. United States,* 258 F.3d 1294, 1302 (Fed. Cir. 2001) (rejecting a bid protest brought by labor organizations, explaining that because they were "not actual or prospective bidders or offerors, they d[id] not have standing").

Limiting bid protests to actual or prospective bidders or offerors is not unique to the federal system. The American Bar Association's Model Procurement Code for State and Local Governments limits the right to protest solicitations to "[a]ny actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation." Model Procurement Code for State & Loc. Gov'ts § 9-101(1) (A.B.A. 2000). Both D.C. and Virginia also limit bid protests to actual or prospective bidders or offerors. *See* D.C. Code § 2-360.08(a); D.C. Mun. Regs. tit. 27, § 300.1 (citing the definition of "aggrieved person" in D.C. Mun. Regs. tit. 27, § 199.1); Va. Code Ann. §§ 2.2-4360(A); 2.2-4364. And the Washington Metropolitan Area Transit Authority

4

("WMATA") — an entity created by interstate compact like MWAA — limits protests to "interested parties," who are "actual or prospective offeror[s] in the procurement involved." WMATA, *Office of Procurement and Materials (PRMT) Best Practices Manual (BPM)* § 17-1(e) (Sept. 4, 2024).[3]

Here, the Baltimore-DC Building Trades is not an actual or prospective bidder, meaning it could not demonstrate that it "has a legitimate interest in the procurement" at issue here. MWAA MTD Memo. 13. Therefore, there was no bid protest process to exhaust. It would be futile to force the Baltimore-DC Building Trades to file a bid protest, since that bid protest would necessarily be dismissed. *See Wilson v. UnitedHealthcare Ins. Co.*, 27 F.4th 228, 241 (4th Cir. 2022) (explaining futility exception to exhaustion requirements). Instead, the proper forum for the Baltimore-DC Building Trades' challenge is this Court. *See, e.g.*, *SourceAmerica v. U.S. Dep't of Educ.*, 368 F. Supp. 3d 974, 990-91 (E.D. Va. 2019), *vacated in part on other grounds sub nom. Kansas v. SourceAmerica*, 826 F. App'x 272 (4th Cir. 2020) (per curiam) (allowing judicial review where party could not have filed a bid protest). The Baltimore-DC Building Trades cannot have waived a claim it could not have raised before. *See, e.g.*, *Calla Mejia v. Sessions*, 866 F.3d 573, 581 (4th Cir. 2017) (explaining that exhaustion requirements don't apply when the party previously had no avenue to raise their challenge).

Though MWAA is correct that courts have interpreted the phrase "party aggrieved" to require plaintiffs to have been a party in an agency action, *e.g.*, *NRC v. Texas*, 605 U.S. 665, 675-76 (2025), MWAA has not explained why that interpretation should apply here. The Enabling Act has been described as "similar to the Administrative Procedure Act, which confers standing on '[a]

---

[3]    https://www.wmata.com/business/procurement/upload/Best-Practices-Manual.pdf

person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *LTMC/Dragonfly, Inc. v. MWAA*, 699 F. Supp. 2d 281, 291 (D.D.C. 2010) (quoting 5 U.S.C. § 702). There is no reason to narrowly construe the Enabling Act's grant of jurisdiction.

But even if the Court did apply the specialized "aggrieved party" definition here, it should follow the lead of courts that excuse a plaintiff's failure to participate in agency action where the plaintiff had no opportunity to participate. *E.g.*, *N. Am. Sav. Ass'n v. Fed. Home Loan Bank Bd.*, 755 F.2d 122, 125 (8th Cir. 1985); *Nat. Res. Def. Council v. NRC*, 666 F.2d 595, 601 n.42 (D.C. Cir. 1981). To lock the Baltimore-DC Building Trades out of court because it "was not a party to proceedings in which, by definition, it could not join would be to exalt literalism over common sense." *Nat. Res. Def. Council v. NRC*, 666 F.2d at 601 n.42. The Baltimore-DC Building Trades is ineligible to file a bid protest because it is not an interested party, so it should not be required to file a bid protest in order to challenge MWAA's unlawful solicitation.

Moreover, MWAA's categorization of the Baltimore-DC Building Trades' claim as based in "[c]ontract law" confuses the issue. MWAA MTD Memo. 15. The Baltimore-DC Building Trades is not party to a contract with MWAA, and any project labor agreement ("PLA") negotiated on an MWAA project would be between the Baltimore-DC Building Trades *and a contractor*. See, for example, the PLA entered into with Turner Construction Company for the Tier 2 East project, which is expressly "entered into . . . by and between Turner Construction Company, its successors or assigns . . . and the Baltimore-DC Metro Building Trades" — not MWAA. Compl. Ex. E at 1. The Baltimore-DC Building Trades does not intend to enter into any contract with MWAA.

And contrary to MWAA's suggestion that the Baltimore-DC Building Trades never provided "notice and opportunity to cure" the violation of the lease, MWAA MTD Memo. 15, the

Baltimore-DC Building Trades and MWAA have communicated about MWAA's compliance with its lease since October 2025, and MWAA refused to change course, Compl. ¶ 52. Therefore, the Baltimore-DC Building Trades provided ample notice and opportunity to cure MWAA's violation of its lease.

**II.    The Baltimore-DC Building Trades' Complaint Plausibly Alleges that MWAA Violated Its Lease.**

> ### A.    *MWAA's Motion to Dismiss for Failure to State a Claim Improperly Relies on Evidence Outside the Complaint.*

On a motion to dismiss for failure to state a claim, the Court may examine only the pleadings, documents incorporated into the complaint by reference, and matters subject to judicial notice. *See* Fed. R. Civ. P. 12(d). The Baltimore-DC Building Trades does not dispute that its complaint and the documents attached to its complaint are fair game. MWAA reattaches several of these materials to its motion to dismiss. MWAA also attaches minutes of the Strategic Development Committee as Exhibit 2, portions of MWAA's Contracting Manual as Exhibit 4, Resolution 01-20 as Exhibit 6, and a court decision as Exhibit 7. The Baltimore-DC Building Trades does not dispute that these materials are properly subject to judicial notice.

But MWAA also attaches an affidavit, relies on a declaration submitted by the Baltimore-DC Building Trades in support of its preliminary injunction motion, and relies on the Baltimore-DC Building Trades' memorandum in support of its preliminary injunction motion. *See* MWAA MTD Memo. 19, 22, 24-26. These materials are not incorporated by reference in the complaint or subject to judicial notice. The Court should not consider these materials in resolving MWAA's motion to dismiss. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015) (reversing district court's grant of a motion to dismiss where the district court relied on documents that were not part of the complaint or subject to judicial notice); *Wilson v. O'Bryant*, No. 22-cv-556, 2023 U.S. Dist. LEXIS 173554, at *6-7 (E.D. Va. Sept. 27, 2023) (declining to

consider declaration attached to a motion to dismiss).

> **B.    MWAA's Lease Requires It to Comply with Procurement Policies Like Resolution 22-35.**

>> 1.    *Resolution 22-35 Is a Published Competitive Procedure.*

MWAA does not dispute that Section 6005(e) of the Enabling Act gives federal district courts "jurisdiction to compel the Airports Authority and its officers and employees to comply with the terms of the lease" between MWAA and the federal government, 49 U.S.C. § 49104(c), and that "[a]n action may be brought on behalf of the United States by the Attorney General, or by any aggrieved party," Pub. L. No. 99-500, 100 Stat. 1783, 1783-378. Instead, MWAA argues that Resolution 22-35 "has nothing to do with obtaining competition in procurement," so that resolution is not a "published competitive procedure." MWAA MTD Memo. 17. The Court should reject this argument. Courts across the country have found that PLAs can promote the purposes underlying competitive bidding laws by advancing public entities' interests in efficient, safe construction of complex projects with minimal lost time.[4]

MWAA also misreads the Court of Federal Claims' recent decisions in *MVL USA, Inc. v. United States*, 174 Fed. Cl. 437 (2025) and *Brasfield & Gorrie, LLC v. United States*, 179 Fed. Cl. 509, 2025 U.S. Claims LEXIS 3637 (2025), to mean that "the mandatory inclusion of a PLA requirement frustrates the concept of full and open competition." MWAA MTD Memo. 17. As relevant here, all those cases hold is that, for the specific procurements at issue, Executive Order

---

[4]    *E.g.*, *Enertech Elec., Inc. v. Mahoning Cnty. Comm'rs*, 85 F.3d 257, 260 (6th Cir. 1996); *Master Builders of Iowa, Inc. v. Polk County*, 653 N.W.2d 382, 396 (Iowa 2002); *Associated Builders & Contractors, Inc. v. San Francisco Airports Comm'n*, 981 P.2d 499, 512 (Cal. 1999); *John T. Callahan & Sons, Inc. v. City of Malden*, 713 N.E.2d 955, 963-64 (Mass. 1999); *Associated Builders & Contractors, Inc. v. S. Nev. Water Auth.*, 979 P.2d 224, 229 (Nev. 1999) (per curiam); *Laborers Loc. #942 v. Lampkin*, 956 P.2d 422, 434-35 (Alaska 1998).

8

14063's PLA requirement had "no substantive performance relation to the substance of the solicitations at issue" because it excluded offerors for reasons unrelated to advancing the government's interests in procurement. *MVL USA, Inc.*, 174 Fed. Cl. at 470; *see Brasfield & Gorrie, LLC*, 2025 U.S. Claims LEXIS 3637, at *56 (similar); *see also N. Am.'s Bldg. Trades Unions v. Dep't of Def.*, 783 F. Supp. 3d 290, 311 (D.D.C. 2025) (rejecting government's reliance on *MVL USA, Inc.*, since that case's holding "was limited to the specific procurements before the Court of Federal Claims"). Those cases do not hold that PLA requirements are per se anticompetitive. In fact, just last month, the Comptroller General rejected a challenge to a PLA required by Executive Order 14063, explaining that the PLA requirement and its implementing regulations are not "*per se* in conflict with" federal competitive bidding law. U.S. Gov't Accountability Off., B-424037, *HHI Corp.* 8 (Feb. 18, 2026).[5]

Nor is MWAA correct that only policies in its Contracting Manual are "published competitive procedures." MWAA MTD Memo. 18. Section 5.3.2.1 of the Contracting Manual reads:

> From time to time, the Board may adopt and amend policies, evidenced by resolution, which are available on the Authority's website. The Contracting Officer will clearly identify whether any such policy applies to a given Solicitation and, if so, shall include the relevant requirements of such in the Solicitation.

MWAA MTD Memo. Ex. 4 at 55. The Contracting Manual itself describes resolutions adopted by the Board and made available online — outside of the Contracting Manual — as published policies. Though the Contracting Officer is required to determine whether a resolution applies to a given solicitation, the Contracting Officer's authority to do so was delegated from the Board. *See id.* Ex. 6 at 2-3 (delegating the Board's authority to "[a]pprove the award of all competitively

---

[5]    https://www.gao.gov/assets/890/884273.pdf

9

offered construction contracts" to the CEO, and allowing the CEO to "[r]edelegate" that authority). That authority must "be exercised in accordance with . . . the Lease with the United States, . . . and Resolutions of the Board." *Id.* at 3. Therefore, Contracting Officers are bound by Board resolutions and violate those resolutions by failing to include them in solicitations when they apply. The Strategic Development Committee minutes support this interpretation: Board members stated that Resolution 22-35 "would bind the Airports Authority within the limitations of the resolution when sending out RFPs for this type of project." *Id.* Ex. 2 at 6. The fact that Resolution 22-35 is not included in the Contracting Manual does not control whether it is a binding published competitive procedure.

2. *Federal District Courts Have Jurisdiction to Compel MWAA to Comply with <u>All</u> Lease Terms.*

The lease provides that MWAA must (1) "adopt, maintain, and adhere to policies and procedures in the areas of procurement and contracting," which "should be substantially similar to those of similar public entities and should strive to reflect a standard of 'best practices'"; and (2) comply with "generally accepted management principles," subject to audit by the Comptroller General. Compl. Ex. A at 35, 66. Just like the "published competitive procedures" requirement, those requirements independently bind MWAA.

Contrary to MWAA's argument that only *certain* provisions of the lease are enforceable in federal court, *see* MWAA MTD Memo. 16-17, the Fourth Circuit made clear in *Washington-Dulles Transportation, Ltd. v. MWAA*, 263 F.3d 371 (4th Cir. 2001), that Section 6005(e) of the Enabling Act gives federal courts the authority to enforce any term of the lease. There, a disappointed bidder sued after MWAA awarded a contract to another bidder. The disappointed bidder claimed that MWAA violated its lease by disobeying its procurement policies. Interpreting the "broad language" of Section 6005(e), the court found that there was federal jurisdiction "to entertain an

10

action brought by a proper party to require MWAA to comply with *any term* contained in the Lease." *Id.* at 376 (emphasis added). Exercising jurisdiction over enforcement of the lease was "consistent with the continuing federal interest . . . in the enforcement of the terms of a lease to which it is a party" and "with the structure of the relevant state statutes," which exempt MWAA from state procurement laws. *Id.* "[A]lthough the state statutes provide a state court forum for general contract claims against MWAA, . . . these statutes do not specifically address actions to compel MWAA to adhere to its duties under the Lease. The Enabling Act . . . fills this gap . . . ." *Id.*

This Court's decision in *San Jose Construction Group v. MWAA*, 415 F. Supp. 2d 643 (E.D. Va. 2006) is a straightforward application of *Washington-Dulles Transportation, Ltd.* In *San Jose Construction Group*, a general contractor sued MWAA *for breach of contract* — unquestionably a state-law claim — after MWAA allegedly wrongfully terminated its contract with that contractor. The contractor argued that *Washington-Dulles Transportation, Ltd.* held that federal courts "retain concurrent jurisdiction over all claims involving MWAA." *Id.* at 646. The contractor was wrong: *Washington-Dulles Transportation, Ltd.* "stands for the far narrower proposition that federal courts have subject matter jurisdiction to resolve disputes pertaining to the solicitation or award of MWAA contracts." *Id.* Unlike the claims in *Washington-Dulles Transportation, Ltd.*, the breach-of-contract claim in *San Jose Construction Group* was not authorized under the federal lease and, therefore, did not implicate any federal interests. *Id.* at 646-47.

*Washington-Dulles Transportation, Ltd.* and *San Jose Construction Group* show that federal courts have jurisdiction to decide claims alleging violations of MWAA's lease with the federal government. They do *not* show that only certain violations of the lease are actionable or otherwise limit jurisdiction to violations of certain lease provisions. Instead, as the Fourth Circuit

11

made clear in *Washington-Dulles Transportation, Ltd.*, there is federal jurisdiction "to entertain an action brought by a proper party to require MWAA to comply with *any term* contained in the Lease."  263 F.3d at 376 (emphasis added).  By failing to adhere to Resolution 22-35 — even if Resolution 22-35 were not a "published competitive procedure" — MWAA violates its lease by failing to "adhere to policies and procedures in the areas of procurement and contracting" and by failing to comply with "generally accepted management principles."  Compl. Ex. A at 35, 66.

By failing to address the Baltimore-DC Building Trades' allegations that MWAA has independently violated the lease provisions requiring adherence to policies in the areas of procurement and contracting and compliance with generally accepted management principles, MWAA has waived any argument that a failure to follow Resolution 22-35 would somehow not violate these requirements.  Those requirements are included in the lease just like the "published competitive procedures" requirement and are, therefore, intended to promote the federal interest in the two Washington, D.C.-area airports.  *See* 49 U.S.C. §§ 49101(10); 49102(a).

3.    *Resolution 22-35 Serves Federal Interests, Not Just the Baltimore-DC Building Trades' Interests in Collective Bargaining.*

Though the Enabling Act does not require this Court to evaluate whether individual policies advance legitimate federal interests, MWAA also mischaracterizes the interests served by Resolution 22-35's PLA requirement by claiming that "[g]ranting an advantage to a union does not implicate a federal concern embedded in the Enabling Act or in the Federal Lease."  MWAA MTD Memo. 19.  The Enabling Act makes clear that the federal government has an interest "in the operation of the 2 federally owned airports."  49 U.S.C. § 49101(3).  And more than MWAA's interest in "obtain[ing] federal discretionary grants," MWAA MTD Memo. 19, the staff report shows that Resolution 22-35 serves MWAA's interests in "structure and stability" in large-scale construction projects, avoiding "uncertainties" associated with large-scale projects, avoiding

12

"labor related disruptions," and ensuring that projects "proceed efficiently without interruption." Compl. Ex. B at 3.   The Strategic Development Committee minutes confirm that MWAA's Board was concerned about "delays and conflicts among contractors and subcontractors" on large-scale construction projects, MWAA MTD Memo. Ex. 2 at 3, use of a "highly trained workforce" that consistently shows up to work, *id.* at 4, and "level[ing] the playing field for underrepresented working groups" and "creat[ing] a pathway for those who do not have it now to become part of the American dream," *id.* at 10.

Courts have long held that PLA requirements serve these interests.  For example, in *Boston Harbor*, the Supreme Court held that PLAs can serve interests like public entities' "need for predictable costs and a steady supply of skilled labor."  *Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 231 (1993). In *Johnson v. Rancho Santiago Community College District*, the court observed that a PLA would "contain[] costs, optimiz[e] productivity, and boost[] the economy."  623 F.3d 1011, 1026 (9th Cir. 2010).  And in *HERE Local 57 v. Sage Hospitality Resources, LLC*, the court found that a PLA would "ensur[e] that labor strife does not damage the development" of a project in which a public entity had a proprietary interest.  390 F.3d 206, 217 (3d Cir. 2004).

The PLA adopted on the Tier 2 East project also stated these purposes.  The parties "acknowledge[d] that the construction of the Tier 2 Concourse (East) is important to the development of Washington Dulles International Airport for the comfort and convenience of its customers," "recognize[d] the need for the timely completion of the Project without interruption or delay," intended to establish "a framework for labor-management cooperation and stability," and hoped "to avoid workplace tension when union and non-union employees work side-by-side." Compl. Ex. E at 1.  There is no reason why a PLA under Resolution 22-35 would not also serve

13

federal interests set out in the Enabling Act and lease.

### C.    MWAA Violated Its Lease by Failing to Comply with Resolution 22-35.

MWAA does not dispute that the Tier 2 Center project *could* receive federal funding under the Airport Improvement Program or that certain Airport Improvement Program funding is discretionary.  Nor does MWAA dispute that the Tier 2 Center project is estimated to cost $35 million or more.  Therefore, the Tier 2 Center project is a "large-scale construction project[]," defined as a construction project for which the total estimated cost of the construction contract is $35 million or more for which the Airports Authority [could] receive discretionary Federal funding."  Compl. Ex. C at 2.

The only issue is whether MWAA "is eligible" to receive discretionary federal funding for the Tier 2 Center project.  Based on *Washington-Dulles Transportation, Ltd. v. MWAA*, 87 F. App'x 843 (4th Cir. 2004) (per curiam), MWAA claims that the Contracting Officer's decision that the Tier 2 Center project was not eligible for discretionary federal funding was not "arbitrary or irrational."  MWAA MTD Memo. 23.  But MWAA's selective quoting of that case leaves out part of the analysis.  The full quotation is:  "Thus, WDT [the plaintiff] was required to 'demonstrate prejudice attributable to *either (1) the procurement procedure's violation of applicable statutes or regulations,* or (2) an arbitrary or irrational decision of the procurement official on matters primarily committed to his discretion.'"  *Wash.-Dulles Transp., Ltd.*, 87 F. App'x at 849 (quoting *Newport News Shipbuilding & Dry Dock Co. v. U.S. Dep't of the Navy*, 960 F.2d 386, 392 (4th Cir. 1992)) (emphasis added).  That case looked *both* to whether the procurement decision was arbitrary or irrational *and* to whether "MWAA's procurement process violated the Enabling Act Act [sic] or Lease."  *Id.* at 851.  Though the "arbitrary or irrational" standard may give Contracting Officers some "discretion on *how* to apply Board resolutions," MWAA MTD Memo. 22 (emphasis added), Contracting Officers have zero discretion in deciding *whether* to follow Board resolutions, since

14

the lease and Enabling Act require compliance with binding procurement policies like Resolution 22-35.

MWAA then goes on to spill considerable ink explaining the process that Contracting Officers use to determine what clauses should be included in a solicitation.  MWAA argues that "[e]ligibility to receive competitive grants . . . is about more than just the nature of the project, and includes other substantive requirements (such as applicant eligibility and cost sharing requirements), as well as procedural requirements (such as mandatory use of FAA Form 5100-144 for the application)."  MWAA MTD Memo. 24.  "Because an airport must apply for a federal discretionary grant, the Airports Authority's view is that 'seeking' a federal discretionary grant is part of what it means to be 'eligible to receive' such grants."  *Id.* at 26 n.17.

That cannot be true.  MWAA rejected language limiting the PLA requirement to projects for which MWAA is **seeking** federal funding.  *See* Compl. ¶¶ 40-41.  This Court should presume that MWAA "intend[ed] its amendment to have real and substantial effect."  *Stone v. INS*, 514 U.S. 386, 397 (1995).  It does not matter that there was "no discussion in the Committee Minutes of the change."  MWAA MTD Memo. 26 n.17.  Had MWAA intended for Resolution 22-35 to apply only when MWAA applies for discretionary federal funding, "there would have been no reason" for the change from "seeks" to "is eligible."  *Stone*, 514 U.S. at 397.

But MWAA goes one step farther, arguing that Resolution 22-35 applies only when "the Airports Authority has an opportunity to apply for a federal competitive grant ***and the grant includes evaluation criteria related to PLAs***."  MWAA MTD Memo. 26 (emphasis added) (footnote omitted); *see also id.* at 23-24 (looking to Resolution 22-35's recitals, the staff report, and the Strategic Development Committee minutes to narrowly interpret the resolution).  MWAA could have limited Resolution 22-35 to projects where the federal government requires a PLA, but

15

it did not.  Though the materials submitted by MWAA suggest that complying with federal PLA requirements was at least part of the Board's purpose in adopting Resolution 22-35, that was not the Board's *sole* purpose.  The staff report shows that Resolution 22-35 serves MWAA's interests in maintaining structure and stability, avoiding uncertainties and labor-related disruptions, and ensuring efficient construction.  Compl. Ex. B at 3.  And the Strategic Development Committee minutes show that the Board was also concerned about delays, conflicts between contractors, use of a highly trained and reliable workforce, and opportunities for underrepresented groups.  MWAA MTD Memo. Ex. 2 at 3-4, 10.  Resolution 22-35's preamble may focus on securing federal funding, but preambles can only "resolve an ambiguity in the operative clause" — "not limit or expand the scope of the operative clause."  *Dist. of Columbia v. Heller*, 554 U.S. 570, 577-78 (2008).

MWAA's reliance on Resolution 22-35's title is similarly unconvincing.  *See* MWAA MTD Memo. 23.  Like a preamble, "a title or heading should never be allowed to override the plain words of a text."  *Fulton v. City of Philadelphia*, 593 U.S. 522, 536-37 (2021) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 222 (2012)).  Resolution 22-35's title — "Implementing a Project Labor Agreement Requirement for Certain Federally Funded Construction Projects" — can certainly be read to suggest that "[t]he Resolution applies to *certain* (i.e., not all)" projects.  MWAA MTD Memo. 23.  It is permissible to interpret the title's use of the word "certain" to refer to construction projects that are estimated to cost $35 million or more and for which MWAA is eligible to receive discretionary federal funding.  But it's not permissible to interpret the title's use of the word "certain" as referring to only *some* of those covered projects (e.g., projects **actually** "funded with federal grants").  *Id.*  That would wrongly narrow the scope of Resolution 22-35's plain words.

Finally, it is not the Baltimore-DC Building Trades' position that "virtually any airport

16

project could conceivably be eligible at some point for federal competitive grant funds and, thus, . . . a PLA should be included in all large construction projects valued at greater than $35 million." MWAA MTD Memo. 22 n.15.  "Eligible" has to do some work, otherwise MWAA would just have required PLAs on large-scale construction projects, whether eligible for discretionary federal funding or not.  The history of Resolution 22-35 shows that a project must be "eligible" for a grant at an earlier stage of the process than when MWAA is "seeking" a grant (as explained above), but the Baltimore-DC Building Trades agrees that MWAA "cannot be 'eligible to receive' a discretionary grant when there are no such discretionary grants available."  *Id.* at 25.

"Eligible" means "[f]it and proper to be selected."  Eligible, *Black's Law Dictionary* (11th ed. 2019); *see also* Eligible, *Webster's Third New International Dictionary* (2002) (similar). Therefore, once a project could be a *proper recipient* of discretionary federal funding — whether that is provided for in the notice of funding opportunity ("NOFO"), a statute, an agency's guidelines, or elsewhere — that project is *eligible* for that funding.

Here, the Tier 2 Center project is eligible for discretionary Airport Improvement Program funding.  As a project at a large hub, primary commercial service airport, it can be supported using discretionary funding.  *See* FAA, *National Plan of Integrated Airport Systems (NPIAS) 2025-2029* app. A (Sept. 30, 2024) (classifying the Washington Dulles International Airport as a large hub, primary commercial service airport);[6] FAA, Order 5100.38D Change 1, *Airport Improvement Program Handbook* 4-8 (Feb. 26, 2019) (explaining that large hub, primary commercial service

---

[6]    https://www.faa.gov/sites/faa.gov/files/airports/planning_capacity/npias/current/ARP-NPIAS-2025-2029-Appendix-A.pdf

17

airports are eligible for discretionary funding).[7]   And Congress has provided supplemental, discretionary appropriations for the Airport Improvement Program for which MWAA could apply. *See* Full-Year Continuing Appropriations & Extensions Act, 2025 § 11301(3), Pub. L. No. 119-4, 139 Stat. 9, 38 (providing $50 million in supplemental appropriations); Consolidated Appropriations Act, 2024 div. F, tit. I, Pub. L. No. 118-42, 138 Stat. 25, 311 (providing approximately $532 million in supplemental appropriations); FAA, *Airport Improvement Program (AIP) 2025-2027 Supplemental Appropriation*.[8]

Of course, there are restrictions on what types of projects discretionary Airport Improvement Program funding may be used for.  FAA guidance makes clear, for example, that discretionary funding is not available if the project will not begin within six months of the grant's issuance.  FAA, Order 5100.38D Change 1, *Airport Improvement Program Handbook*, *supra*, at 4-21 to 4-22.  There are also restrictions on funding for certain types of projects, like projects at contract air traffic control towers.  *Id.* at 4-22.  But here, as a project that would be a proper recipient of discretionary federal funding (which MWAA does not dispute), the Tier 2 Center project is *eligible* for discretionary federal funding, and a PLA should have been required.[9]

---

[7]    https://www.faa.gov/documentLibrary/media/Order/AIP-Handbook-Order-5100-38D-Chg1.pdf

[8]    https://www.faa.gov/airports/aip/aip_supplemental_appropriation (last visited Mar. 12, 2026).

[9]    In its briefing, MWAA refers to funding through the Airport *Terminal* Program.  MWAA MTD Memo. 24.  In its complaint, the Baltimore-DC Building Trades focused on Airport Improvement Program funding because the solicitation for the North Airfield improvements project expressly stated that MWAA "anticipates utilizing Federal Aviation Administration (FAA) Airport Improvement Program funds for this Work."  Compl. Ex. F at 20.  However, the FAA's Airport Terminal Program also provides discretionary funds for terminal development projects

## CONCLUSION

This Court should deny MWAA's motion to dismiss.

Respectfully submitted,

/s/ Lucas R. Aubrey
Lucas R. Aubrey
   Va. Bar No. 74641
Jacob J. Demree, PHV
*Attorneys for the Baltimore-D.C. Metro*
*Building and Construction Trades Council*
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
Phone: (202) 785-9300
Fax: (202) 775-1950
aubrey@shermandunn.com
demree@shermandunn.com

March 12, 2026

---

(like part of the Tier 2 Center project) to entities eligible for funds under the Airport Improvement Program. *See* Infrastructure Investment & Jobs Act div. J, tit. VIII, Pub. L. No. 117-58, 135 Stat. 429, 1418-19; FAA, *FY 2026 Notice of Funding Opportunity: Airport Terminal Program (ATP)* (Dec. 8, 2025), https://www.faa.gov/newsroom/FY26-ATP-NOFO-8DEC2025. Whether under the Airport Improvement Program, the Airport Terminal Program, or both, the Tier 2 Center project is eligible for discretionary federal funds.

19

**CERTIFICATE OF SERVICE**

I certify that on March 12, 2026, this memorandum was filed using the Court's CM/ECF system.  All attorney participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Lucas R. Aubrey
Lucas R. Aubrey
   Va. Bar No. 74641
*Attorney for the Baltimore-D.C. Metro*
*Building and Construction Trades Council*
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
Phone: (202) 785-9300
Fax: (202) 775-1950
aubrey@shermandunn.com

March 12, 2026